# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8400 | **DATE** | 9/11/2002 |
| **CASE TITLE** | Jon Arnold vs. County of Cook Adult Probation Department, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/26/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for reconsideration and/or clarification [73-1] is granted in part and denied in part. A status hearing is set for September 26, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 13 2002 | |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | G-Y. docketing deputy initials | 81 |
| | Copy to judge/magistrate judge. | | |
| RJ/ea | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

2002

JON ARNOLD, )
)
Plaintiff, )
v. ) Case No. 98 C 8400
)
COUNTY OF COOK, ADULT PROBATION )
DEPARTMENT and CHIEF JUDGE DONALD ) Judge Joan B. Gottschall
O'CONNELL, in his official capacity, )
)
Defendants. )

## MEMORANDUM OPINION & ORDER

Plaintiff Jon Arnold pursues this disability discrimination action against the Cook County

Adult Probation Department (the "County"), alleging both disparate treatment and failure to

make reasonable accommodations in violation of the Rehabilitation Act of 1973 ("Act"), 29

U.S.C. § 701 *et seq.*[1] In a previous order, this court granted in part and denied in part the

County's motion for summary judgment. *Arnold v. County of Cook,* No. 98 C 8400, 2001 U.S.

Dist. LEXIS 22647 (N.D. Ill. Sept. 25, 2001). The County now moves for reconsideration and/or

clarification of that order. For the reasons set forth below, the motion is granted in part and

denied in part.

**I**

A prerequisite to Arnold's claims is that he have a disability. The Act defines the term

"disability" as "a physical or mental impairment that substantially limits one or more major life

activities." 29 U.S.C. § 705(9)(B). Arnold alleges that he was substantially limited in driving,

---

[1]The same standards apply under the Act and the Americans with Disabilities Act of 1990
("ADA"), 42 U.S.C. § 12101 *et seq.*, so this order employs case law under the two statutes
interchangeably. *Silk v. City of Chi.*, 194 F.3d 788, 797 n.7 (7th Cir. 1999).

pushing, pulling, standing, sitting, bending, lifting, carrying, and walking.[2] Defendants argued in their motion for summary judgment that Arnold was not disabled because these activities were not "major life activities" and because Arnold's limitations were not "substantial." This court rejected that argument, holding that pushing and pulling are major life activities and that Arnold had raised a genuine dispute of fact as to whether he was substantially limited by his back and neck conditions in these two activities. *Arnold*, 2001 U.S. Dist. LEXIS 22647, at \*8-13.

The County now argues that these determinations undermine Arnold's reasonable accommodation claim. The County's argument rests on the following premises: (1) the only accommodation requested by Arnold was a limit on his driving duties; (2) driving is not a major life activity and Arnold's driving limitations were not substantial; and (3) a reasonable accommodation claim fails unless the requested accommodation is directed toward a major life activity impairment. The third premise, at least,[3] is false.

This is not to say that the County's position is without case support. In *Felix v. New York City Transit Authority*, 154 F. Supp. 2d 640 (S.D.N.Y. 2001), the plaintiff, a transit authority

---

[2]Arnold had previously cited running, but disavowed reliance on this activity in his response to the summary judgment motion.

[3]The court notes that there are compelling reasons to think that driving should qualify as a major life activity. Driving appears to be "of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 122 S. Ct. 681, 691 (2002). In 1995, 91% of workers used an automobile to get to work. U.S. Census Bureau, *Statistical Abstract of the United States: 2001*, tbl. 1091, at 693. Approximately 85% of Americans aged 15 or older were licensed drivers in 2000. *See id.* tbl. 1087, at 681; U.S. Census Bureau, *General Characteristics of United States*, http://factfinder.census.gov (last visited Aug. 27, 2002). Although the Second Circuit once stated that driving is not "major league," *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998), it appears to have recently made a U-turn. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 281 F.3d 333, 345 (2d Cir. 2002) (recognizing that major life activity of caring for one's self encompasses driving).

worker, alleged that her post-traumatic stress disorder ("PTSD") substantially impaired her sleeping and prevented her from working in the subway. Although sleeping qualifies as a major life activity, subway work does not. The plaintiff's only requested accommodation was a light duty position out of the subway. The court held that the "failure to allege a causal connection, or nexus, between the qualifying limitation and the accommodation requested [was] fatal to plaintiff's [reasonable accommodation] claim." *Id.* at 662.

This court respectfully disagrees with *Felix*. A simple hypothetical demonstrates. Suppose an office worker has severe allergies to a wide range of organic substances. As a result, the worker's ability to care for herself, which is a major life activity under applicable regulations, is substantially impaired in multitudinous ways. One relatively minor effect of her allergies is that she cannot touch rubber bands. Her employer refuses to allow her to substitute metal binder-clips for rubber bands, even though they are equally effective and the cost difference is slight. That using rubber bands does not qualify as a major life activity should not undermine her reasonable accommodation claim. Indeed, it is partly because the rubber band limitation is minor that not accommodating it is unreasonable. The only nexus required between the limitation that qualifies an individual as disabled and the limitation for which accommodation is requested is that both be caused by a common physical or mental condition.

This causal connection, and not the one announced in *Felix*, follows from the statutory language. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A).

And, as noted above, "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). Failure to accommodate a limitation constitutes discrimination "because of the disability" only if the limitation is caused by the disability. *Felix* goes a step further, essentially equating the term "limitations" in the reasonable accommodation provision, § 12112(b)(5)(A), with the phrase "substantial[] limit[ation] [of] one or more major life activities" in the definition of disability, § 705(9)(B). But the only thing the two phrases have in common is the word limit. The reasonable accommodation provision includes nothing to suggest that it applies only to "substantial" limitations or limitations that impact "major life activities."

Inexplicably, the court in *Felix* found support for its reading (as does the County here) in the proposition that "[t]he ADA requires reasonable accommodation of the limitations, not of the disability itself." *Felix*, 154 F. Supp. 2d at 662 (quoting 9 Lex K. Larson, *Employment Discrimination* § 154.03, at 154-13 (2d ed. 2001)); *accord Taylor v. Principal Fin. Group*, 93 F.3d 155, 164 (5th Cir. 1996). By narrowing the term "limitations" in the reasonable accommodation provision to cover only the limitation or limitations that qualified the plaintiff's condition as a disability, *Felix* effectively holds that the ADA requires employers to accommodate only the disability itself, not all the limitations it causes. The only other reason *Felix* provides in support of its conclusion is that it "comports with the purpose of the ADA which is to ensure equality of treatment, not create a preference for disabled persons." *Felix*, 154 F. Supp. 2d at 662. Not so. General terms like "equality" and "preference" are of limited value. Every accommodation is in some sense a preference, but the ADA clearly requires accommodation in some circumstances. The question is not whether, but when. The

4

fundamental purpose of the ADA is to eliminate discrimination "because of" disability. This purpose is served directly by requiring employers to accommodate the limitations of employees where those limitations derive from a disability.

The Second Circuit recognized this point well before *Felix*. In *Buckley v. Consolidated Edison Co.*, 155 F.3d 150 (2d Cir. 1998) (in banc), the defendant-employer drug-tested known former substance abusers more frequently than other employees. The plaintiff was a former user whose bladder condition made it impossible for him to urinate in public or on command as required for the drug test. The plaintiff disclaimed any contention that urinating in public or on command was a major life activity, relying instead on his status as a former substance abuser. *Id.* at 154, 156. The court held that the plaintiff failed to state a reasonable accommodation claim because "a neurogenic bladder condition neither is *nor results from* the only impairment here alleged to be a disability within the meaning of the ADA, and . . . it is the neurogenic bladder condition that [defendant] refused to accommodate and that led to the termination of [plaintiff]'s employment." *Id.* at 156 (emphasis added). The emphasized language strongly suggests that had the bladder condition been caused by the plaintiff's former drug abuse, the outcome would have been different. In other words, the Second Circuit requires only that the limitation to be accommodated result from the disability, not that it implicate a major life activity.

This court rejects the County's argument that Arnold's reasonable accommodation claim must be dismissed.

II

To establish a reasonable accommodation claim, Arnold must show that he was a "qualified individual with a disability," which is defined as an "individual with a disability who,

with or without reasonable accommodation, [could] perform the essential functions of the employment position that such individual held." *Id.* § 12111(8). The County argued on summary judgment that Arnold "should be barred from claiming that he is a qualified individual with a disability because he previously represented, when applying for disability benefits, that he was unable to work at all." (Mem. at 21 n.9.) Arnold responded by explaining that his condition worsened after he went out on leave and before he applied for disability benefits in December 1998. (Resp. at 25 n.13.) In its summary judgment order, this court held that a reasonable factfinder could conclude that Arnold's condition had in fact deteriorated during this time period and therefore held that Arnold previously may have been a "qualified individual." 2001 U.S. Dist. LEXIS 22647, at *13-15.

The County now argues that Arnold cannot recover back-pay for any time period after December 1998. The court rejects this argument because it relies on the premise that Arnold's condition never improved after December 1998. Since the County argued on summary judgment for an absolute bar to recovery, not for a limitation on damages, Arnold had no reason to present evidence or argument concerning his post-1998 condition. While the County could perhaps surmount this hurdle on a new motion for summary judgment, the court notes a second potential problem with the County's position. In his deposition testimony and disability application, Arnold made it clear that he believed that he was, at the time of the application and through the date of the deposition, unable to return to his former position only because the County failed to reasonably accommodate his disability. (Defs.' App. Tab A, at 364-65 & Ex.2, at D3528.) Although this strongly suggests that Arnold was not entitled to disability benefits, it also suggests that there may have been no inconsistency between Arnold's representations in the application

6

and his representations in this lawsuit. *See Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 790-91 (7th Cir. 1999). Contrary to the County's argument that Arnold indicated on the application that he was "unable to work at all," it appears that he has consistently maintained that he could perform the essential functions of his former job, but only with reasonable accommodation.

## III

Finally, the County argues that Arnold lost his right to pay when the County offered him substantially similar employment on March 25, 1999. Unlike the County's other arguments, this argument was raised by the County in its motion for summary judgment and responded to by Arnold.[4] (Mem. at 22-23 n.11; Resp. at 24-25.) This court, however, failed to decide the question in its previous order. It does so now and enters partial summary judgment in favor of the County, although not in the precise form requested.

In a letter dated March 25, 1999 (and apparently faxed on that date), the County offered to transfer Arnold to one of four positions. (Defs.' App. Tab E, ¶ 13 & Ex. 6.) On summary judgment, Arnold objected to the introduction of evidence concerning this offer as "conduct or statements made in compromise negotiations." Fed. R. Evid. 408. In support of this objection, Arnold cited his lawyer's facsimile of the next day, which describes the County's offer as a "counteroffer to our settlement offer" and rejects it. (Defs.' App. Tab E, Ex. 10.) In its reply brief, the County conceded that the March 25 letter says nothing about settlement, but asserted

---

[4]Because the court rules in favor of Arnold on the first two issues, it need not consider Arnold's procedural objections to each. Arnold's objection to this third argument, that it was waived because made only in a footnote, is not well-taken. The point was sufficiently clear and well-developed.

that a second letter dated June 8, 1999 "makes explicit" that the original offer was unconditional. (Reply at 14.) Indeed, the June 8 letter clearly states that "[t]he offers made in the March 25, 1999 letter were unconditional." (Defs.' App. Tab E, Ex. 11.)

Unconditional offers are not covered by Rule 408, *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997), but the County has failed to make a sufficiently convincing showing that the March 25 offer was unconditional at the time it was made.

> [W]here a party is represented by counsel, threatens litigation and has initiated [administrative proceedings], any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim.

*Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992). On March 25, litigation was pending and a settlement proposal from Arnold was on the table, in which he sought, among other things, a modified employment position. The offer of alternative positions was made between attorneys and said nothing about settlement. Arnold's counsel interpreted the offer as contingent upon settlement and made this interpretation clear in his prompt response to the County. The County, in turn, did not correct what it now claims was a misinterpretation until June 8, 1999. On the present record, this court finds that Rule 408 covers the March 25 offer,[5] but not the June 8 offer. The June 8 offer was indisputably unconditional. The County argued that each of the positions offered was a reasonable accommodation. With respect to at least one

---

[5]This court disagrees with the alternative holding in *Thomas v. Resort Health Related Facility*, 539 F. Supp. 630, 638 (E.D.N.Y. 1982), that a settlement offer is admissible on the question of back-pay as "another purpose" under the last sentence of Rule 408. Fed. R. Evid. 408. To the contrary, trying to show that back-pay is unavailable is plainly an attempt "to prove . . . invalidity of . . . [a claim's] amount." *Id.*

of these positions (Court Liaison), Arnold provided no counter-argument and conceded that the position was in the same office as his former position, was one for which applicants for Arnold's former position had previously been required to apply, was of equal grade, carried the same salary and benefits, and required no on-the-job driving. (Pl.'s R. 56.1(b) Statement ¶ 97.) This position constituted a reasonable accommodation. Accordingly, the court holds that Arnold may not recover back-pay on his reasonable accommodation claim for any period after June 8, 1999.[6] *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982) (holding that a plaintiff loses his right to pay when he rejects an unconditional offer of substantially similar employment); *Rehling v. City of Chi.*, 207 F.3d 1009, 1016-17 (7th Cir. 2000) (affirming summary judgment in favor of defendant on reasonable accommodation claim where plaintiff did not dispute the suitability of alternative positions offered to him).

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:   September 11, 2002

---

[6]Arnold may nonetheless be able to recover other types of damages incurred after this date. For example, one of Arnold's theories is that the County's disparate treatment and failure to accommodate his limitations aggravated his disability.