# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
NOV 2 1 2002

| | | |
|---|---|---|
| JON P. ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 98 C 8400 |
| | ) | |
| COUNTY OF COOK ADULT PROBATION | ) | Judge Joan B. Gottschall |
| DEPARTMENT, and | ) | |
| CHIEF JUDGE DONALD O'CONNELL, | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
NOV 1 5 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANT'S STATEMENT OF MATERIAL
## FACTS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Rule 56.1 of the General Rules of the United States District Court for the Northern District of Illinois, defendant, County of Cook Adult Probation Department (the "Probation Department"), by its attorneys, submits the following statement of material facts to which there is no genuine issue in support of Defendant's Second Motion for Summary Judgment.

### THE PARTIES

1.     The Probation Department is established pursuant to the Probation and Probation Officers Act, 730 ILCS 110/15(2)(a) and provides probation or court services and such other related services assigned to it by the Circuit Court or by law, 730 ILCS 110/9b(2). Third Amended Compl. ¶ 2.

### JURISDICTION AND VENUE

2.     Plaintiff initially brought this action against Cook County, the Probation Department and Chief Judge O'Connell under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). In March 1999, pursuant to a stipulation of dismissal, defendant Cook County was

83

dismissed without prejudice from the case. In June 1999, plaintiff filed a motion for leave to file a second amended complaint adding a claim of reverse race discrimination under Title VII of the Civil Rights Act of 1964, which this Court granted. In August 1999, plaintiff filed a motion to voluntarily dismiss the reverse race discrimination claim, which this Court granted. In January 2000, plaintiff filed a motion for leave to file a third amended complaint adding a claim for disability discrimination under the Vocational Rehabilitation and Other Rehabilitation Services Act ("Rehabilitation Act"), which this Court granted. Compl. ¶ 4. Plaintiff's claims against Chief Judge O'Connell and claims brought under the ADA were dismissed, by this Court, on September 25, 2001.

3.      Defendant resides in this Judicial District. Compl. ¶ 5.

## PLAINTIFF'S INITIAL EMPLOYMENT
## WITH THE ADULT PROBATION DEPARTMENT

4.      Plaintiff began working for the Probation Department in 1985 as a Caseload Officer. Arnold Dep. 5:7-9; 35:2-7.[1]

5.      Probation Officers often switch jobs within the Probation Department. Arnold Dep. 152:20-22. Thus, in 1988, plaintiff requested and received the position of Resource Officer, located at 26th Street and California Avenue in Chicago, Illinois. Arnold Dep. 37:14-23.

6.      In June 1988, while working as a Resource Officer at 26th and California, plaintiff moved to Elgin, Illinois, in Kane County. Arnold. Dep. 36:8-11; 37:14-17; 38:6-10. As a result, plaintiff's work commute increased substantially. Arnold Dep. 38:22-24; 39:1.

7.      In 1989, plaintiff was transferred to Rolling Meadows as a Resource Officer. Arnold Dep. 38:15-17.

-----

1/      In cites to deposition transcripts, the page numbers are referenced before the colon and the line numbers are referenced after the colon.

8.      In 1990, plaintiff was promoted to Chief Financial Officer of the Probation Department. Arnold Dep. 38:18-21; 39:2-7. That job was based at 26th and California. Arnold Dep. 39:2-7.

9.      In or about December 1990, plaintiff was transferred to the Resource Officer position in Rolling Meadows. Arnold Dep. 41:14-24. As a result, plaintiff's salary dropped five grades. Arnold Dep. 42:1-5.

## COMMUNITY SERVICE UNIT

10.     In or about 1994, plaintiff was transferred to the Community Service Unit. Arnold Dep. 6:8-10. That unit is responsible for all of the probationers assigned to community service from any one of the Cook County courthouses. Deenihan Aff. ¶ 2. Each of the officers within the Community Service Unit is based at a particular courthouse (26th and California, Skokie, Rolling Meadows, Maywood, Bridgeview or Markham) and is responsible for placing and supervising a caseload of probationers performing community service work. Deenihan Aff. ¶ 2.

11.     David Deenihan has been the supervisor of the Community Service Unit since 1995. Deenihan Aff. ¶ 1. As the supervisor of the Community Service Unit, Mr. Deenihan is responsible for, among other things, distributing the community services cases to the Community Service Officers ("CSOs") in a way that achieves workload equity between those offices. Deenihan Aff. ¶ 3. Mr. Deenihan has discretion to transfer CSOs to cover different territories within the Community Service Unit. Vaughan Aff. ¶ 14.

12.     Because the workload across the Community Service Unit often varies depending on the courts' dockets and the unit's staffing levels, Mr. Deenihan regularly monitors and modifies the boundaries of each officer's territory to achieve parity. Deenihan Aff. ¶ 4. Thus, the boundaries of

any CSO's territory fluctuate frequently, depending on workload and staffing levels. Deenihan Aff. ¶ 4.

13. Mr. Deenihan holds periodic meetings for all CSOs. Deenihan Aff. ¶ 5. Those meetings are held at 26th and California. Deenihan Aff. ¶ 5.

14. All probation officers, including CSOs, are required to receive a minimum of 40 hours of formal training each year. Vaughan Aff. ¶ 13. The Probation Department offers a variety of training sessions, most of which are given at the Department's facilities in Chicago. Vaughan Aff. ¶ 13.

15. CSOs are responsible for assigning probationers to sites at which they perform their required community service work, checking at regular intervals to ensure that the probationers are performing their assigned community service work, and finding new locations to participate in the community service program. Deenihan Aff. ¶ 6; Arnold Dep. 11:17-24 – 19:1-6. CSOs are required to drive to the community service sites to perform each of these tasks. Deenihan Aff. ¶ 6. CSOs generally seek to place a probationer at a community service site close to the probationer's home or place of work. Arnold Dep. 18:20-24; 98:19-20; Deenihan Aff. ¶ 6.

16. CSOs have the option of preparing transportation expense vouchers reflecting their on-the-job driving. Deenihan Aff. ¶ 22. These vouchers are forwarded to the Finance Department so that the CSOs can be reimbursed on a per mile basis for their driving. Deenihan Aff. ¶ 22. These vouchers indicate the address of each community service site that CSOs visit, as well as the number of miles traveled between each site. Deenihan Aff. ¶ 22. CSOs also have the option of seeking reimbursement for their on-the-job driving through their federal income taxes. Deenihan Aff. ¶ 22. Some CSOs opt not to obtain reimbursement for their on-the-job driving. Deenihan Aff. ¶ 22; Gravitt Aff. ¶ 7: White Aff. ¶ 7; Griseto Aff. ¶ 7; Spencer-Moran Aff. ¶ 7.

-4-

17.     CSOs set their own schedules; they determine which sites they visit on a given day, the order in which they visit those sites, and when they will reach each site, without approval from their supervisor. Deenihan Aff. ¶ 7.

18.     CSOs are not required to walk more than 25 minutes at a time. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

19.     CSOs are not required to lift anything weighting more than 25 pounds on a frequent basis or more than 50 pounds from floor to chest level on an occasional basis. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

20.     CSOs are not required to carry more than 25 pounds on a frequent basis or more than 50 pounds for a short distance. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

21.     CSOs are not required to stand for more than 45 minutes at a time. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

22.     CSOs are not required to sit for more than 30-45 minutes at a time. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6. CSOs always have the option of standing up and stretching as needed. Deenihan Aff. ¶ 8.

23.     CSOs are not required to bend more than 40 degrees from an upright position as a part of their job duties. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

24.     CSOs are not required to run. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

25.     CSOs are not required to push or pull more than one-third of their body weight. Deenihan Aff. ¶ 8; Gravitt Aff. ¶ 3; White Aff. ¶ 3; Griseto Aff. ¶ 4; Spencer-Moran Aff. ¶ 3; Scott Aff. ¶ 6.

26.     From approximately 1994 to September 1998, Plaintiff served as the only CSO based at the Rolling Meadows courthouse and was responsible for probationers within that district. Arnold Dep. 5:9-21; Deenihan Aff. ¶ 9.

27.     The boundaries of plaintiff's territory as a CSO changed often. Arnold Dep. 82:2-3; Deenihan Aff. ¶ 9. Plaintiff was required to cover territory outside of the Rolling Meadows district, including in the City of Chicago. Arnold Dep. 97:16-19; Deenihan Aff. ¶ 9. In each of the years that he was a CSO, plaintiff visited multiple sites in the City of Chicago. Arnold Dep. 97:1-24 – 100:1-3; Deenihan Aff. ¶ 9. Plaintiff's position as a CSO also included territory outside of Cook County and territory that was more than 20 miles from his home. Arnold Dep. 46:12-24 – 47:1-8; Deenihan Aff. ¶ 9. Approximately 30-40 percent of plaintiff's cases were outside the jurisdiction of the Rolling Meadows courthouse. Arnold Dep. 67:10-24 – 68:1-10.

28.     When he was a CSO, plaintiff worked approximately two and a half days per week at his office in the Rolling Meadows Courthouse. Arnold. Dep. 9:18-22. On his days in the office, plaintiff worked from approximately 8:15 a.m. to 4:30 p.m. Arnold Dep. 9:14-17. The other two and a half days per week, plaintiff worked in the field. Arnold Dep. 13:11-14. On the days when he worked in the field, plaintiff first went to his office at the Rolling Meadows Courthouse. Arnold Dep. 13:21-24.

29.     Plaintiff's home is approximately 17 miles from the Rolling Meadows courthouse. Arnold Dep. 44:16-18.

30.     Plaintiff controlled his work schedule and had discretion as to how he scheduled his field visits. Arnold Dep. 103:4-16, 116:1-5; Deenihan Aff. ¶ 10.  Those schedules were not subject to advance approval by his supervisor. Arnold Dep. 15:12-22; Deenihan Aff. ¶ 10. En route to sites in the field, plaintiff was able to stop and stretch if necessary. Arnold Dep. 338:6-24; Deenihan Aff. ¶ 10; Gravitt Aff. ¶ 6; Scott Aff. ¶ 5; Griseto Aff. ¶ 6; Spencer-Moran Aff. ¶ 6; White Aff. ¶ 6 .  On certain field visits, plaintiff "sat and chewed the fat" for extended periods with the people at the site. Arnold Dep. 16:21-24.

31.     Plaintiff visited each of  the community service sites near his home 2-3 times per month. Arnold Dep. 53:11-14.  There were no community service sites near his home that plaintiff did not visit at least every 30 days.  Arnold Dep. 53:8-10.

32.     In February 1997, plaintiff applied to be a Resource Officer based at the Rolling Meadows Courthouse. Arnold Dep. 112:18-20.  That position entailed driving approximately 30-40 miles  from the Rolling Meadows courthouse, per day.  Arnold Dep. 115:1-12.  Plaintiff was physically able to perform the functions of a Resource Officer in February 1997 and August 1998. Arnold Dep. 122:14-18, 123:4-12. However, plaintiff's request for a transfer to the Resource Officer position was denied.  Arnold Dep. 128:20-24.

### SHORT STAFFING IN THE COMMUNITY SERVICE UNIT

33.     In early to mid 1997, there were 11 CSOs in the Community Service Unit.  Deenihan Aff. ¶ 11.

34.     The officers and their assignments (defined in general terms, rather than by specific boundary lines) were as follows:

| Community Service Officer | Assignment |
|---|---|
| 1.     Cleoma Scott | Near Southeast Chicago |

|     |                 |                                                                                       |
|-----|-----------------|---------------------------------------------------------------------------------------|
| 2.  | Michael Plecas  | Intensive Probation - North side of Chicago and overflow of Adult Probation cases     |
| 3.  | Ann Simpson     | Bridgeview                                                                             |
| 4.  | Thomas Romano   | Intensive Probation - South side of Chicago and overflow of Adult Probation cases     |
| 5.  | Jerry Stenson   | Markham                                                                                |
| 6.  | Michael Griseto | Northeast Chicago                                                                      |
| 7.  | Jennifer Gravitt | Far Southeast side of Chicago                                                          |
| 8.  | Mark Dillon     | Varied in Chicago                                                                      |
| 9.  | Hank Bach       | Skokie                                                                                 |
| 10. | John Passarella | Maywood                                                                                |
| 11. | Jon Arnold      | Rolling Meadows                                                                        |

Deenihan Aff. ¶ 12.

35.     In late 1997 and early 1998, three of those CSOs left the unit.  Deenihan Aff. ¶ 13.

36.     Despite Mr. Deenihan's request for additional staffing, none was provided initially. Deenihan Aff. ¶ 14.  As a result, Mr. Deenihan was required to distribute the workload of the departed officers among all of the CSOs still in the unit.  Deenihan Aff. ¶ 14.  Thus, all CSOs had additional cases assigned to them.  Deenihan Aff. ¶ 14; Arnold Dep. 80:4-15.  Additional cases were assigned to Mr. Arnold and all of the other CSOs, including in and after May 1998.  Deenihan Aff. ¶ 14; Arnold Dep. 83:22-24; 84:1-18.

## PLAINTIFF'S MEDICAL CONDITION

37.     In August 1986, plaintiff was involved in a car accident.  Arnold Dep. 28:8-9; 36:6-7. After the car accident, plaintiff suffered from back and neck problems.   Arnold Dep. 311:1-11.

38.     After plaintiff's car accident, plaintiff requested a modified work schedule so that he could attend physical therapy.  Arnold Dep. 36:12-24; 37:1.  The Probation Department granted plaintiff's request for an accommodation.  Arnold Dep. 36:12-24; 315:1-15.

-8-

39.　Plaintiff's doctors are not aware of any limitation on his ability to walk. Shea Dep. 117:14-19; Gigante Dep. 146:17-24; 147:1-8. Plaintiff advised Dr. Shea that he had no problems walking. Shea Dep. 119:12-13 and Ex. 2. Plaintiff testified at his deposition that he is able to walk for at least 25 minutes at a time. Arnold Dep. 359:1-3.

40.　Plaintiff testified that he is able to lift 30-35 pounds. Arnold Dep. 358:1-5. Plaintiff's doctors testified that plaintiff is able to lift 25 pounds on a frequent basis and 50 pounds from floor to chest level on an occasional basis. Shea Dep. 106:20-24; 107:1-20; Gigante Dep. 132:1-6.

41.　Plaintiff is able to carry approximately 25 pounds on a frequent basis and approximately 50 pounds for a short distance. Shea Dep. 104:1-18; 105:17-19; Gigante Dep. 136:7-14.

42.　Plaintiff's doctors testified that plaintiff is able to stand for approximately 45 minutes to an hour at one time, after which plaintiff can stand again if he moves around and stretches for a while. Shea Dep. 111:11-24; 112:1-13; Gigante Dep. 142:11-23, 144:1-13.

43.　Plaintiff is able to sit for approximately 30-45 minutes at a time. Shea Dep. 48:2-4; Gigante Dep. 133:4-22; Arnold Dep. 357:20-23. After sitting for 45 minutes, plaintiff is able to sit again if he stands up and stretches for several minutes. Gigante Dep. 134:10-12; Shea Dep. 99:2-8. If he is able to stop at regular intervals, plaintiff is able to sit and ride in a car for 14 hours. Arnold Dep. 302:9-16.

44.　Plaintiff's doctors testified that plaintiff is able to bend 40 degrees from an upright position. Shea Dep. 101:13-17; Gigante Dep. 135:1-11. Plaintiff testified that he is not supposed to bend over all the way, and that he uses his knees and thighs to bend now because he has been taught to bend correctly. Arnold Dep. 358:12-17.

-9-

45.     Plaintiff is unable to run. Arnold Dep. 357:5; Shea Dep. 119:14-15; Gigante Dep. 147:9-10.

46.     Plaintiff is able to push and pull approximately one-third of his body weight. Shea Dep. 108:13-19; 110:1-16; Gigante Dep. 139:3-8.

47.     Plaintiff is able to drive for approximately 40-45 minutes at a time. Arnold Dep. 358:6-9; Shea Dep. 115:6-15; Gigante Dep. 47:17-23. After driving for 45 minutes, plaintiff is able to drive again if he stretches his back for approximately 15 minutes. Shea Dep. 44:9-16; 126:9-16. Plaintiff's doctors have estimated that it takes approximately 45 minutes to drive 20 miles. Shea Dep. 43:15-18; 44:20-24; Gigante Dep. 47:17-21. However, the time spent in the car, not the mileage, is the more important factor. Shea Dep. 45:1-13; Gigante Dep. 47:22-24; 48:1-3.

48.     Plaintiff is physically capable of performing jobs that require little or no on-the-job driving. Gigante Dep. 50:10-12; Shea Dep. 130:11-20.

## PLAINTIFF'S PROPOSED LIMITATION AND REFUSAL OF ALTERNATE POSITION

49.     On several occasions, plaintiff complained to Mr. Deenihan about the amount of work-related driving he was required to do. Arnold Dep. 91:19-24; 92:1-8; 116:6-12 Deenihan Aff. ¶ 16.

50.     On or about March 9, 1998, plaintiff sent Mr. Deenihan, via inter-office mail, a note on a prescription pad from his doctor stating that plaintiff should not drive more than 20 miles from his home. Arnold Dep. 266:11-17; Arnold Dep. Ex. 15; Deenihan Aff. ¶ 17 and Ex. 1.

51.     In response and in or before May 1998, Mr. Deenihan offered plaintiff the opportunity to serve as a CSO based at 26th and California. Arnold Dep. 273:13-24 – 274:1-4; Deenihan Aff. ¶ 18. The CSO positions based at 26th and California have the same salary, benefits, promotional opportunities, and educational requirements as the CSO position based in Rolling

-10-

Meadows. Vaughan Aff ¶ 14. In that position, plaintiff's responsibilities would have been identical to his responsibilities as a CSO in Rolling Meadows, except for the location. Deenihan Aff. ¶ 18.

52.     If plaintiff had accepted Mr. Deenihan's offer to transfer to a CSO position based at 26th and California, plaintiff would have been assigned to one of the positions covering the Southeast side of Chicago, because those positions typically involve the least amount of driving. Deenihan Aff. ¶ 19. From 1997 to date, those positions have been held by Cleoma Scott and Jennifer Gravitt. Deenihan Aff. ¶ 19; Scott Aff. ¶ 1; Gravitt Aff. ¶ 1.

53.     Plaintiff refused to accept any position at 26th and California. Arnold Dep. 153:4-15; Deenihan Aff. ¶ 18. Plaintiff claims that he refused these offers because his commute from his home in Elgin to 26th and California would be too long. Arnold Dep. 153:13-22. Plaintiff was unwilling to move closer to 26th and California to shorten his commute. Arnold Dep. 154:1-19.

### IN 1997-1998, THE 26TH AND CALIFORNIA CSO POSITION WOULD HAVE SATISFIED PLAINTIFF'S LIMITATIONS

54.     The CSOs based at 26th and California, covering territories in the City of Chicago, are required to do less on-the-job driving than are the CSOs responsible for suburban areas, such as Rolling Meadows. Arnold Dep. 274:19-24 – 75:1; Deenihan Aff. ¶ 18. CSOs based at 26th and California never or very rarely have to drive more than 20 miles between community service sites. Deenihan Aff. ¶¶ 18, 21, 24 and Ex. 2; Scott Aff. ¶ 9 & Exhibit 1; Gravitt Aff. ¶ 9; Griseto Aff. ¶ 9; Spencer-Moran Aff. ¶ 9; White Aff. ¶ 9. Although the workload of the CSOs based at 26th and California increased in 1997-1998 when the Community Service Unit was short staffed, CSOs based at 26th and California still rarely or never had to drive more than 20 miles between community service sites and thus it still rarely or never took them more than 45 minutes to drive between community service sites. Deenihan Aff. ¶¶ 21, 24 & Ex. 2; Scott Aff. ¶ 9; Gravitt Aff. ¶ 9; Griseto Aff. ¶ 9. In 1997 to 1998, the CSOs based at 26th and California were Cleoma Scott, Jennifer

Gravitt, Mark Dillon, and Michael Griseto. Deenihan Aff. ¶ 15. Currently, the CSOs based at 26th and California are Cleoma Scott, Jennifer Gravitt, Catherine Spencer-Moran, and Christine White. Deenihan Aff. ¶ 25.

55.     Cleoma Scott has held the position of CSO based out of 26th and California since before 1997. Scott Aff. ¶ 1. Throughout that time, her assignment has generally covered the near Southeast side of Chicago. Scott Aff. ¶ 8. The longest distance Ms. Scott drives between two community service sites is 14 or 15 miles. Scott Aff. ¶ 9 & Ex. 1. Ms. Scott never drives more than 20 miles between community service sites. Scott Aff. ¶ 9 & Ex. 1. It takes Ms. Scott approximately 35-45 minutes to drive 14 or 15 miles. Scott Aff. ¶ 9. If traffic or construction is bad, it can take Ms. Scott up to 50 minutes to drive 14 or 15 miles, but it rarely takes her more than 45 minutes to drive between community service sites. Scott Aff. ¶ 9. Although Ms. Scott's caseload increased in late 1997 to early 1998 when the Community Service Unit was short staffed, Ms. Scott still never drove more than 20 miles between community service sites and still rarely spent more than 45 minutes driving between community service sites. Scott Aff. ¶ 9 & Ex. 1. Ms. Scott obtains reimbursement for her on-the job driving through transportation expense vouchers. Scott Aff. ¶ 7. These vouchers reflect that the longest drive between community service sites for which Ms. Scott has sought reimbursement since October 1996 is 14 miles. Scott Aff. Ex. 1.

56.     Jennifer Gravitt has held the position of CSO based at 26th and California since before 1997. Gravitt Aff. ¶ 1. Throughout that time, her assignment has generally covered the far Southeast side of Chicago. Gravitt Aff. ¶ 8. Ms. Gravitt drives between one and eight miles between community service sites. Gravitt Aff. ¶ 9. Ms. Gravitt never drives more than 20 miles between community service sites. Gravitt Aff. ¶ 9. It typically takes Ms. Gravitt ten minutes or less to drive between community service sites. Gravitt Aff. ¶ 9. It never takes Ms. Gravitt more than 45 minutes

-12-

to drive between community service sites. Gravitt Aff. ¶ 19. Although Ms. Gravitt's caseload increased in late 1997 to early 1998 when the Community Service Unit was short staffed, Ms. Gravitt still never drove more than 20 miles between community service sites and it still never took her longer than 45 minutes to drive between community service sites. Gravitt Aff. ¶ 9. Ms. Gravitt does not submit vouchers for reimbursement of her on-the-job driving. Gravitt Aff. ¶ 7.

57. Mark Dillon held the position of CSO based at 26th and California from before 1997 until April 2000. Deenihan Aff. ¶¶ 15, 24. During that time, Mr. Dillon's territory covered a variety of areas in Chicago. Deenihan Aff. ¶ 24. Mr. Dillon submitted vouchers to obtain reimbursement for his on-the-job driving. Deenihan Aff. ¶ 24 & Ex. 2. These vouchers cover on-the-job driving Mr. Dillon did from November 1996 through April 1998. Deenihan Aff. ¶ 24 & Ex. 2. These vouchers reflect that the average distance Mr. Dillon drove between community service sites was four to five miles. Deenihan Aff. ¶ 24 & Ex. 2. The farthest distance Mr. Dillon drove between community service sites was 20.1 miles, which he drove on one occasion and which is the only drive exceeding 20 miles recorded on Mr. Dillon's vouchers. Deenihan Aff. ¶ 24 & Ex 2. Mr. Dillon no longer works for the Probation Department. Deenihan Aff. ¶ 24.

58. In 1997 and 1998, Michael Griseto was a CSO based at 26th and California. Griseto Aff. ¶ 1. Mr. Griseto's territory generally covered the Northeast side of Chicago. Griseto Aff. ¶ 8. In that position, Mr. Griseto typically drove between 5 and 20 miles between community service sites, and it typically took him one-half hour to drive between community service sites. Griseto Aff. ¶ 9. However, on occasion, Mr. Griseto drove greater than 20 miles between community service sites and in bad traffic, could spend more than 45 minutes driving between community service sites. Griseto Aff. ¶ 9. Mr. Griseto did not seek reimbursement for his on-the-job driving when he was

-13-

a CSO based at 26th and California. Griseto Aff. ¶ 7. Mr. Griseto is no longer a CSO based at 26th

and California. Griesto Aff. ¶ 1.

### POST-1998, THE 26th AND CALIFORNIA CSO POSITION
### WOULD HAVE SATISFIED PLAINTIFF'S LIMITATIONS

59.     Currently, Catherine Spencer-Moran is a CSO based at 26th and California. Spencer-

Moran Aff. ¶ 1. Ms. Spencer-Moran has held that position since May 1999. Spencer-Moran Aff.

¶ 1. Ms. Spencer-Moran's territory generally covers the far South side of Chicago. Spencer-Moran

Aff. ¶ 8. Ms. Spencer-Moran drives between one and ten miles between community services sites.

Spencer-Moran Aff. ¶ 9. Ms. Spencer-Moran never drives more than 20 miles between community

service sites. Spencer-Moran Aff. ¶ 9. It typically takes Ms. Spencer-Moran twenty-five minutes

to one-half hour to drive between community service sites. Spencer-Moran Aff. ¶ 9. However, if

traffic is bad, it can take Ms. Spencer-Moran slightly more than 45 minutes to drive between

community service sites. Spencer-Moran Aff. ¶ 9. However, it rarely takes Ms. Spencer-Moran

more than 45 minutes to drive between community service sites. Spencer-Moran Aff. ¶ 9. Ms.

Spencer-Moran does not seek reimbursement for her on-the-job driving. Spencer-Moran Aff. ¶ 7.

60.     Currently, Christine White is a CSO based at 26th and California. White Aff. ¶ 1. Ms.

White's territory generally covers the far South side of Chicago. White Aff. ¶ 8. Ms. White drives

between two and six miles between community service sites. White Aff. ¶ 9. Ms. White never

drives more than 20 miles between community service sites. White Aff. ¶ 9. It typically takes Ms.

White 20 to 30 minutes to drive between community service sites. White Aff. ¶ 9. However, in bad

traffic, it can take Ms. White slightly more than 45 minutes to drive between community service

sites. White Aff. ¶ 9. However, it rarely takes Ms. White more than 45 minutes to drive between

community service sites. White Aff. ¶ 9. Ms. White does not seek reimbursement for her on-the-job

driving. White Aff. ¶ 7.

## PLAINTIFF'S MEDICAL LEAVE

61.     On September 4, 1998, plaintiff advised Mr. Deenihan that he was going to begin a disability leave. Arnold Dep. 300:5-8; Deenihan Aff. ¶ 20. Plaintiff did not ask for or complete the required paperwork for a medical leave at that time. Vaughan Aff. ¶ 3.

62.     On September 4, 1998, Donna Vaughan sent plaintiff a letter asking him to submit proper documentation for his medical leave of absence. Arnold Dep. 302:23-24; 303:1-11; Vaughan Aff. ¶ 3 and Ex. 1. In that letter, Ms. Vaughan advised plaintiff, "should I be able to assist you in any way, do not hesitate to contact me." Vaughan Aff. ¶ 3 and Ex. 1.

63.     While on leave, plaintiff never contacted Ms. Vaughan with any request for assistance or accommodation. Arnold Dep. 303:12-17; Vaughan Aff. ¶ 3.

## PLAINTIFF REFUSES ALTERNATIVE POSITIONS

64.     On March 25, 1999, the Probation Department offered plaintiff the positions of: (1) Case Management (i.e., Caseload) Officer at Rolling Meadows; (2) Court Liaison Officer in the Rolling Meadows facility; (3) Case Management Officer at 26th and California (Chicago); and (4) Court Liaison Officer at 26th and California. Vaughan Aff. ¶ 4 & Ex. 2. All of these positions had the same grade, salary, benefits, promotional opportunities and educational requirements as plaintiff's CSO position. Vaughan Aff. ¶¶ 5-8.

65.     Plaintiff originally rejected the offers made by defendant on March 25, 1999. Vaughan Aff. ¶ 9 & Ex. 3; Arnold Dep. 221:5-24. Instead, plaintiff proposed that he be permitted to work as the CSO in Rolling Meadows with substantially reduced driving and that he be paid a sufficient sum of money. Vaughan Aff. ¶ 9 & Ex. 3. Plaintiff never asked for a job that would require no field work. Arnold Dep. 37:2-5.

66.     On June 8, 1999, defendant, through its attorneys, reiterated the offer to transfer plaintiff to any one of the four positions listed above in paragraph 70.  Vaughan Aff. ¶ 10 & Ex.4. Defendant also offered to transfer plaintiff to two additional positions:  (1) Caseload Officer in Skokie; and (2) Caseload Officer at the Walnut facility, located at Ashland and Lake, in Chicago. Vaughan Aff. ¶ 10 & Ex. 4.  All of these positions had the same grade, salary, benefits, promotional opportunities, and educational requirements as plaintiff's CSO position.  Vaughan Aff. ¶¶ 5-8.

67.     Plaintiff rejected the offers defendant made on June 8, 1999.  Vaughan Aff. ¶ 11; Arnold Dep. 221:5-24.  Instead, plaintiff requested to be transferred to the Resource Officer position in Rolling Meadows.  Vaughan Aff. ¶ 11; Arnold Dep. 221:1-4.  Plaintiff's request was denied because the Rolling Meadows Resource Officer position was occupied. Vaughan Aff. ¶ 11 & Ex. 5.

68.    In December 2001, plaintiff notified defendant that he wished to accept the position of Court Liaison Officer at Rolling Meadows, a position the Probation Department offered to him on March 25, 1999 and June 8, 1999.  Vaughan Aff. ¶¶ 4, 10, 12 & Exs. 2, 4, 6.  After completing the necessary paperwork, plaintiff was placed in that position and has held that position to date. Vaughan Aff. ¶ 12.

Respectfully submitted,

COUNTY OF COOK ADULT PROBATION DEPARTMENT

By _____
      One of Its Attorneys

Jerold S. Solovy
Joel T. Pelz
Emma J. Sullivan
Special Assistant Attorneys General
Jenner & Block, LLC
One IBM Plaza
Chicago, Illinois  60611
(312) 222-9350

Dated: November 15, 2002

-17-