# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8400 | **DATE** | 5/30/2003 |
| **CASE TITLE** | Jon Arnold vs. County of Cook Adult Probation Department, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ■ Pretrial conference is set for 9/12/03 at 2:00PM.

(7) ■ Trial is set for 11/3/03 at 9:00AM.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Second Motion for Summary Judgment [82-1] is denied. Final Pretrial Order and Motions in Limine are due by 6/30/03. Responses are due by 7/14/03. Replies are due by 7/21/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 5 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 105 |
| | Copy to judge/magistrate judge. | | | |
| RJ/ea | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JON ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 98 C 8400 |
| ) | |
| COUNTY OF COOK, ADULT PROBATION ) | |
| DEPARTMENT and CHIEF JUDGE DONALD ) | Judge Joan B. Gottschall |
| O'CONNELL, in his official capacity, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JUN 0 5 2003

## MEMORANDUM OPINION & ORDER

Plaintiff Jon Arnold sued his employer, the County of Cook Adult Probation Department ("Probation Department" or "Department"), for violations of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*[1] Specifically, Arnold claims that the Department failed to accommodate his purported disability and treated him less favorably than other non-disabled employees. Before the court is the Department's second motion for summary judgment, which is denied for the reasons set forth below.

## Background

Arnold began working for the Probation Department in 1985. Arnold has held several different positions during his years of employment with the Department, and has been based at both the courthouse at 26th and California in Chicago and the courthouse in Rolling Meadows. In 1986, he was in a car accident that resulted in injuries to his back and neck. In June 1988, while working as a resource officer at 26th and California, Arnold moved to Elgin, Illinois,

---

[1]The court previously dismissed the Chief Judge of the Circuit Court of Cook County as a defendant and granted summary judgment in favor of the Department on Arnold's claim for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

105

thereby substantially increasing his commute to work. In 1989, Arnold was transferred to Rolling Meadows, where he served first as a resource officer then, from 1994 through September 4, 1998, as a community service officer. "[I]t is undisputed that Arnold, as a community service officer for the Department, located community service positions for persons sentenced by the state court to perform community service. It is also undisputed that Arnold's job required him to visit placement sites in and around Chicago, and, therefore, required him to engage in considerable driving as part of his job. It is further undisputed that Arnold suffered back and neck ailments that made long-distance driving painful, and that Arnold made the [Probation] Department aware that he wanted a reduction in the amount of driving associated with his job." *Arnold v. County of Cook Adult Prob. Dept.*, No. 98 C 8400, 2001 U.S. Dist. LEXIS 22647, at *5 (N.D. Ill. Sept. 25, 2001) ("September 2001 order" or "Arnold I"). On March 9, 1998, Arnold sent his supervisor David Deenihan, via interoffice mail, a copy of a doctor's note which stated that Arnold should not drive more than 20 miles from his home due to his back problems; at the top, Arnold wrote a note to Deenihan asking him to "[p]lease forward this to upper [management] ASAP so that an accommodation can be made in the territory I now cover." (Pl.'s App. Supp. Opp. 2d Mot. Summ. J. (Pl.'s App. at Tab 7.) Although the doctor's note specified a twenty-mile limit, it is undisputed that the time spent in the car is more important than the mileage,[2] that he is able to drive for 45 minutes at a time, and that he is able to resume driving again provided he stretches for approximately 15 minutes.

Arnold claims that despite his requests, the Department failed to accommodate his

---

[2]The 20 mile limitation was based on his doctor's estimate that it takes approximately 45 minutes to drive 20 miles.

alleged disability and treated him less favorably than other non-disabled employees. The Department disputes those claims, contending that it is entitled to summary judgment on both counts.

The Department's first motion for summary judgment was granted in part and denied in part, as explained more fully in the court's original order of September 25, 2001, *Arnold I*, 2001 U.S. Dist. LEXIS 22647, at *9, and its subsequent order of September 11, 2002, which granted in part the Department's motion for reconsideration and/or clarification of the September 2001 order, *Arnold v. County of Cook Adult Prob. Dept.*, 220 F. Supp. 2d 893 (N.D. Ill. 2002) ("September 2002 order" or "Arnold II"). In its first motion for summary judgment, part of the Department's argument was that even if Arnold were disabled under the Rehabilitation Act,[3] his failure-to-accommodate claim failed as a matter of law because Arnold rejected a reasonable offer of accommodation, *i.e.*, the Department's offer to transfer him to 26th and California in May 1998 ("May 1998 offer"). Based on the record presented, however, the court declined to find that the May 1998 offer constituted a reasonable accommodation as a matter of law because, although it was "undisputed that the job at 26th Street would require 'less on-the-job driving' than Arnold's job at Rolling Meadows, . . . the parties ha[d] not addressed whether the job would satisfy Arnold's physical limitations."[4] *Arnold I*, 2001 U.S. Dist. LEXIS 22647, at *28. After

---

[3]The court found a disputed issue of material fact as to whether Arnold is disabled under the Rehabilitation Act. *Arnold I*, 2001 U.S. Dist. LEXIS 22647, at *9.

[4]Although the court did not find the May 1998 offer reasonable as a matter of law, it did address some of Arnold's arguments on that issue. Arnold argued that the May 1998 "offer was unreasonable because it was not a product of an interactive process and because it would have forced [him] to give up an accommodation that he previously received for his disabilities." *Arnold I*, 2001 U.S. Dist. LEXIS 22647 at *22. Rejecting both arguments, the court ruled that (1) "an offer of accommodation need not be the product of an interactive process so long as it is a

3

the court issued its September 2002 order regarding the Department's motion for reconsideration and/or clarification, the Department obtained leave to file a second motion for summary judgment on the issue left open in the September 2001 order, *i.e.* whether the May 1998 offer was a reasonable offer of accommodation given Arnold's physical limitations.

<u>Analysis</u>

In its second motion for summary judgment, the Department contends that the May 1998 offer reasonably accommodated Arnold's physical limitations, thus defeating his failure-to-accommodate claim. The Department also argues that Arnold's disparate treatment claim must fail as a matter of law because "but for plaintiff's refusal to accept that reasonable accommodation, the incidents that allegedly form the basis for plaintiff's disability discrimination claim would not have occurred." (Def.'s Mem. Supp. 2d Mot. Summ. J. ("Def.'s Mem.") at 3.)

The court addresses each argument in turn, keeping in mind that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

reasonable accommodation," *id.* at *23-24 (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)); and (2) "an accommodation will not be deemed unreasonable even if it involves the withdrawal of a prior accommodation allowing the plaintiff to enjoy a short commute, and even if it involves the transfer of the plaintiff to a new office, resulting in a 'significantly' longer commute for the plaintiff," *id.* at *25 (citing *Corder v. Lucent Tech., Inc.*, 162 F.3d 924, 928 (7th Cir. 1998)). An employer's obligation to provide accommodation does not extend to "[a]ctivities that fall outside the scope of the job, like commuting . . . ." *Bull v. Coyner*, No. 98 C 7583, 2000 WL 224807, at *9 (N.D. Ill. Feb. 23, 2000); *Laresca v. Am. Tel. & Tel.*, 161 F. Supp. 2d 323, 333-34 (D.N.J. 2001); *Salmon v. Dade County Sch. Bd.*, 4 F. Supp. 2d 1157, 1163 (S.D. Fla. 1998).

court must examine the admissible evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. Failure to Accommodate

To establish that the May 1998 offer was a reasonable accommodation for Arnold, the Department offers evidence that the community service officers based at 26th and California "rarely or never" drove for more than 20 miles, or more than 45 minutes, at a time to perform their jobs. Significantly, that evidence is undisputed. The crux of Arnold's argument in opposition to summary judgment is his contention that the Department never, in fact, made the May 1998 offer.

Arnold's argument that the Department never offered him a position at 26th and California is improper, however, because it directly contradicts a judicial admission Arnold previously made during the course of this litigation. "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). They "have the effect of withdrawing a fact from contention . . . [and are] conclusive, unless the court allows [them] to be withdrawn." *Id.* (internal citations omitted). "Any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission," *In re Lefkas Gen. Partners*, 153 B.R. 804, 806 (N.D. Ill. 1993), provided it is a

5

statement of fact rather than a legal conclusion, *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681 (7th Cir. 2001) (concurring opinion). In the course of briefing defendants' first motion for summary judgment, Arnold made the clear and unequivocal judicial admission that in or before May 1998, the Department offered him the opportunity to serve as a community service officer based at 26th and California.[5] (Pl.'s Obj. and Ans. to Defs.' Statement Material Facts, ¶ 37.) Given his judicial admission, Arnold cannot argue now that the Department never offered him a position at 26th and California. And it is undisputed that had Arnold accepted the May 1998 offer, there would be less on-the-job driving, and he rarely, if ever, would have had to drive more than 45 minutes at a time to perform his job. The May 1998 offer thus met Arnold's physical limitations, and constitutes a reasonable offer of accommodation. An individual who rejects a reasonable accommodation is not considered a qualified individual with a disability under the Rehabilitation Act. *Crocker v. Runyon*, 207 F.3d 314, 320 (6th Cir. 2000); *see also Kerno v. Sandoz Pharm. Corp.*, No. 93 C 20112, 1994 WL 511289, at *6 (N.D. Ill. Sept. 13, 1994) (same result under ADA). Because Arnold did not accept the May 1998 offer, he may not recover

---

[5]Specifically, paragraph 37 states:

On several occasions, plaintiff complained to Mr. Deenihan about the amount of work-related driving he was required to do. As a result, in or before May 1998, Mr. Deenihan offered plaintiff the opportunity to serve as a [community service officer] based at 26th and California. In that position, plaintiff would have received the same salary and benefits and promotional opportunities as he had as a [community service officer] based in Rolling Meadows. In that position, plaintiff's responsibilities would have been identical to his responsibilities as a [community service officer] in Rolling Meadows, except for the location."

(Pl.'s Obj. and Ans. to Defs.' Statement Material Facts, ¶ 37) (internal citations omitted). Arnold responded: "Undisputed; further responding, Plaintiff states that he advised Deenihan on numerous occasions that the amount of driving, as well as the nature of the driving involved, were detrimental to his back and neck conditions." (*Id.*) (internal citations omitted).

6

damages on his failure-to-accommodate claim for any period after May 1998.

Arnold argues, however, that even if the May 1998 offer were made, he has an actionable claim based on the damage he suffered due to the Department's failure to accommodate him earlier. Arnold points to the testimony of one of his physicians, who gave his medical opinion that between November 1997 and early 1998, Arnold "aggravated his then-existing back conditions and suffered new damage in the form of a bulged disk . . . ." This aggravation, according to Arnold, was caused by an increase in the amount of driving he was required to do for his job in late 1997 and in 1998. But the purported aggravation matters only if Arnold notified the Department that he required accommodation and the Department failed to respond—if Arnold failed to notify the Department that he needed accommodation, it makes no difference whether his condition worsened. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (employee has initial duty to inform employer of disability). The court thus construes Arnold's argument as an argument that the May 1998 offer was an untimely response to his request for accommodation.

The reasonableness of an offer of accommodation "depend[s] on a good faith effort to assess the employee's needs and to respond to them." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 280 (7th Cir. 1996). "[R]easonableness does not depend solely on effectiveness or timeliness." *Id.* But even though the Department ultimately offered an accommodation that met Arnold's physical limitations, that does not necessarily mean that it made a good faith effort when it initially received Arnold's request for accommodation. If, for example, the Department ignored Arnold's request for months before responding, it may face liability for its delay. *See Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). The relevant issues, therefore, are

whether the Department delayed in responding to Arnold's request for accommodation, and if so, whether its delay was unreasonable.

Those are issues the trier of fact must decide because the parties dispute when Arnold first requested an accommodation, as well as the facts regarding the Department's response.[6] It is undisputed that in October 1997, Arnold's doctor recommended that Arnold restrict his work-related driving to 20 miles on any given journey. Arnold claims, generally, that he asked Deenihan on multiple occasions in late 1997 and early 1998 to limit the amount of driving he was required to do. Significantly, however, Arnold offers no evidence that he shared his doctor's recommendation with the Department until March 1998.[7] The first request for which he offers any detail was a letter he sent to Deenihan dated February 4, 1998.[8] In sum, that letter refers to a phone conversation between Deenihan and Arnold at the end of January in which Arnold complained that the increases in size of his caseload and his territory were aggravating his back and neck problems. In the letter, Arnold acknowledged that the Department was short-handed, and that he was "not the only community service officer that is getting the brunt of the

---

[6]It is also disputed whether and how Arnold's driving requirements changed in late 1997 and in early 1998. Arnold claims that his driving requirements increased. The Department counters that after comparing the average number of miles he drove per pay period between 1994 and 1998, the average number of miles he drove per day, and the average mileage of each leg of his trip, it is clear that although the total number of miles he drove increased, the average miles per day, and average miles of each leg, actually decreased.

[7]Given that Arnold had specific information from his doctor since October 1997 regarding the accommodation he required, yet did not share that information with the Department until March 1998, the trier of fact could find that the Department cannot be liable for failure to accommodate Arnold during the period before Arnold provided the doctor's note in March 1998. *See Beck*, 75 F.3d at 1134.

[8]The letter made no mention of his doctor's recommendation.

referrals[,]" but stated "I need a resolution to this situation immediately" and requested a downsizing of his territory. (Pl.'s App. at Tab 11.) In closing, he wrote, "This letter should be shared with your chain of command . . . ." (*Id.*) It is undisputed that Deenihan never responded to the February letter, but Deenihan explains that he never received it. Given that the letter was incorrectly addressed to 2650 North California rather than 2650 South California, a jury could certainly believe him on that point. The court, however, cannot make such a credibility determination. Regardless, even if the letter never arrived, there is a question whether Arnold requested an accommodation during the alleged conversation between Arnold and Deenihan at the end of January (referenced in the letter), or at some time earlier.[9]

The Department, for its part, concedes that Arnold complained to Deenihan on several occasions that the driving he was doing was hurting his back, but contends that the first time Arnold requested an accommodation was in March 1998 when he advised the Department that his doctor had given him driving restrictions; the Department responded by offering to transfer him to 26th and California approximately two months later, in or before May 1998. Relying on *Jay*, 233 F.3d at 1017, the Department urges the court to find that mere delay in providing an accommodation to an employee does not make the accommodation unreasonable. The court cannot make that finding on summary judgment in this particular case, however.

In *Jay*, the Seventh Circuit upheld summary judgment in favor of an employer who provided an accommodation 20 months after the employee made his request. *Id.* The problem for the Department is that whether a delayed offer is unreasonable depends on the circumstances

---

[9]It would be helpful for the court, and the trier of fact, to know whether the Department had any established process by which an employee could request an accommodation.

of the case. In *Jay*, the Seventh Circuit recognized that unreasonable delay may subject an employer to liability, but found the employer acted reasonably and in good faith because the delay was due to the fact that no suitable positions were available any earlier. *Id.* In contrast, in the case at bar it remains a question for the trier of fact whether there was a delay, and if so, whether despite the delay, the Department responded to Arnold's request reasonably and in good faith.[10]

Accordingly, the Department's motion for summary judgment is denied. However, Arnold is precluded by his previous judicial admissions from arguing that the May 1998 offer was never made, and may not recover damages incurred after he declined to accept that offer.

B. Disparate Treatment

Defendants also moved for summary judgment regarding Arnold's disparate treatment claim, arguing that an individual who refuses a reasonable accommodation is not considered a qualified individual with a disability and, further, that "[a]n individual whose refusal to accept a reasonable accommodation causes that individual further injury should be held accountable for his own actions and cannot recover further for that injury." (Def.'s Mem. at 14.) The court agrees. As explained above, Arnold has no claim for damages arising after he declined to accept the May 1998 offer. His disparate treatment claim remains viable, however, for the time period

---

[10]Arnold raised a third argument: that his requested accommodation was available, that the Department failed to pay any attention to his request, and thus a reasonable juror could find the Department liable for failing to offer a reasonable accommodation. The court disagrees. Arnold's requested accommodation—to remain at Rolling Meadows, with reduced driving—would have required the Department to assign some of Arnold's cases and territory to other community service officers. The Department had no obligation "to shuffle job responsibilities amongst employees to create a position to accommodate [Arnold's] disability." *Jay*, 233 F.3d at 1017.

between his request for accommodation and the May 1998 offer. For that reason, the Department's motion to dismiss the disparate treatment claim is denied.

ENTER:

/s/ Joan B. Gottschall
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 30, 2003